2022 IL App (4th) 220301

NO. 4-22-0301

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Adams County |
| NATASHA L. McBRIDE, | ) | No. 20CF500 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Amy Christine Lannerd, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        The State charged defendant, Natasha L. McBride, with 17 offenses arising out of

a fatal motor vehicle collision. The trial court dismissed one of those charges—aggravated driving

under the influence (DUI) of tetrahydrocannabinol (THC) (625 ILCS 5/11-501(d)(1)(F) (West

2020))—before trial on speedy-trial grounds. The State appeals that order. For the following

reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3        On August 14, 2020, defendant, while operating a motor vehicle, collided with

another vehicle, killing four people in the other vehicle. On August 17, 2020, the State charged

defendant in an information with four counts of leaving the scene of a personal injury accident

(625 ILCS 5/11-401(b) (West 2020)), four counts of reckless homicide (720 ILCS 5/9-3(a) (West 2020)), and four counts of driving while license revoked (625 ILCS 5/6-303(a) (West 2020)). On August 20, 2020, the State charged defendant in an indictment with those same offenses, plus four counts of first degree murder (720 ILCS 5/9-1(a)(2) (West 2020)).

¶ 4       Defendant never posted bond. She asserted an insanity defense. The case was continued numerous times on defendant's motion. When defendant finally demanded trial, the court set the matter for a trial in December 2021. However, as this trial date approached, the State was not ready to try the case, as its expert required additional information before rendering an opinion regarding defendant's sanity. Over defendant's objection, the court removed the case from the December 2021 jury trial docket. The court rescheduled the trial for February 2022, with a deadline of December 30, 2021, for completion of discovery.

¶ 5       On December 29, 2021, the State moved for an extension of the discovery deadline. Before the court heard that motion, on January 11, 2022, the State charged defendant with aggravated DUI in count XVII of an amended information. Specifically, the State alleged that on August 14, 2020, defendant operated her vehicle "while under the influence of tetrahydrocannabinol" and two or more people died in the collision. On January 12, 2022, the State filed a second amended information correcting an error unrelated to the issue in this appeal. On January 14, 2022, over defendant's objection, the court granted the State's motion for an extension of the discovery deadline.

¶ 6       The defense contemplated both retaining a second expert to counter the aggravated DUI charge and filing additional motions pertaining to that charge. Defendant thus moved to continue the February 2022 trial date, asking for the additional delay to be attributed to the State. In her motion, defendant asserted that count XVII was predicated on discovery that had been "in

the possession of the State since at least December 7, 2020, if not earlier." Defendant did not specify in her motion what that discovery entailed.

¶ 7    At the January 28, 2022, hearing on defendant's motion for a continuance, there was a dialogue between the attorneys about when the State received information that prompted the aggravated DUI charge in count XVII. The conversation is difficult to follow from the transcript, as it is not clear that the attorneys were talking about the same things. Defense counsel said he believed count XVII was based on a "lab result" that he received on December 7, 2020. However, the prosecutor said that the state's attorney's office received "the actual lab result" on April 29, 2021, not in December 2020. The prosecutor also said that count XVII was based on unspecified evidence that came to light on and after December 7, 2020, including information received as recently as "two weeks ago." Ultimately, the State did not object to defendant's motion for a continuance, though the State objected to the delay being attributed to the State. The court declined to attribute to the State defendant's requested continuance of the trial. In light of that ruling, defendant renewed her request for a continuance of the trial, and the State had no objection. Thus, on defendant's motion, the court set the matter on the April 2022 trial docket.

¶ 8    Defendant subsequently moved to dismiss count XVII on speedy-trial grounds. She filed an amended motion on March 15, 2022. According to defendant, count XVII was subject to compulsory joinder with the original charges filed against her in August 2020. From this premise, defendant reasoned that any continuances attributable to her on the original charges were not attributable to her on count XVII. Therefore, because defendant had been in custody for more than 500 days by the time the State filed count XVII, defendant asked the court to dismiss that count.

¶ 9    In paragraph 14 of defendant's amended motion to dismiss, defendant referenced facts that the officers who investigated the collision knew in August 2020. Specifically, in

paragraph 14(a), defendant referenced the following facts taken from a police report that was prepared by Officer Mike Cirrincione: (1) "Officer Haistings" [*sic*] told Cirrincione that defendant " 'showed signs of being under the influence' "; (2) defendant purportedly told Cirrincione that she smoked cannabis approximately five minutes before leaving her residence; and (3) when Cirrincione asked defendant if she was under the influence of cannabis while driving, defendant purportedly said, " 'Yes.' " In paragraph 14(b), defendant alleged that "the police had knowledge of the defendant's purported cannabis consumption because of their observations in combination with the statement the defendant made directly to the police." In paragraph 14(c), defendant alleged that she was written a citation for aggravated DUI on August 14, 2020, though she acknowledged such citation "does not contain a case number and does not appear to have ever been filed with the court."

¶ 10   Defendant attached to her amended motion to dismiss count XVII two pages of a police report, along with her August 14, 2020, citation for aggravated DUI. In addition to the facts referenced above, in the police report, Cirrincione documented that while he was at Blessing Hospital after the collision, he observed indicators that defendant had used stimulants. Specifically, Cirrincione wrote that defendant (1) constantly asked for water; (2) "had uncontrollable tremors in her legs, fast speech, was talkative and [was] restless"; (3) had a temperature; and (4) had a "heart rate in the 160's while she was laying down." Cirrincione wrote that he asked defendant if she had used methamphetamine, and she responded: "No, hardly any." When asked about using marijuana, defendant likewise told Cirrincione: "Hardly any."

¶ 11   On March 23, 2022, the matter proceeded to an evidentiary hearing on defendant's amended motion to dismiss count XVII. Officer Amber Hastings of the Quincy Police Department testified for the defense. Hastings testified that she observed defendant at the scene of the collision

on August 14, 2020. Based on defendant's "movements and repeated comments," Hastings suspected that defendant was "under the influence of something." Defendant's unspecified "behaviors" at Blessing Hospital after the collision likewise gave rise to Hasting's suspicions. Hastings told Cirrincione of her belief that defendant was under the influence of some substance.

¶ 12 Cirrincione, who formerly worked for the Quincy Police Department, also testified for the defense. After the collision on August 14, 2020, Cirrincione observed defendant at Blessing Hospital for "a significant amount of time"—approximately an hour and a half or two hours. Defendant's blood and urine were "drawn" around 6 p.m. At the hospital, defendant told Cirrincione she had "smoked cannabis approximately five minutes before driving." Defendant also told Cirrincione she was "under the influence of cannabis at the time of the crash." However, according to Cirrincione, defendant quickly changed her answer and denied being under the influence of cannabis at the time of the crash.

¶ 13 Cirrincione further testified that, on the date of the collision, he wrote defendant a citation for aggravated DUI. Cirrincione "put several tickets on file at the Quincy Police Department," which were to be served after defendant was released from the hospital. Cirrincione did not know whether the aggravated DUI "ticket" was ever "filed," though he "put it with the necessary paperwork" for defendant to be served. On August 14, 2020, Cirrincione "Mirandized" defendant, and he believed he told her she was "under arrest for DUI." Defendant then remained at Blessing Hospital for "some time after August 14th." Cirrincione believed there was a "constant police presence" guarding defendant while she was hospitalized.

¶ 14 On cross-examination, the prosecutor asked Cirrincione whether he was "aware that Blessing Hospital did a drug screen on [defendant] that was negative at the time." Cirrincione responded: "I had later learned that. They don't quantify it." Cirrincione then said "later" "there

was a laboratory report" from the University of Illinois Chicago "on a bottle of urine" that "had a different result." Cirrincione did not recall either the date of this laboratory report or the result, other than that "it was over the ten nanogram other bodily substance limit." Cirrincione wrote defendant the ticket for aggravated DUI before he "learned of the results from Blessing Hospital."

¶ 15        On redirect examination, defense counsel asked Cirrincione when he "learned of the lab result from Blessing Hospital." Cirrincione responded: "I think it was a statement that was made by the State's Attorney, a public statement, is when I learned of it." Cirrincione added: "There were indicators but for someone who doesn't know what to look for besides a report from a specialist, that's all they knew at the time so they said there was no indication."

¶ 16        The State presented no witnesses. However, the prosecutor stated he could make the court aware of two documents either through an "avow" or by introducing exhibits. The prosecutor then told the court the following. Patient notes from Blessing Hospital dated August 14, 2020, indicated that "defendant's drug screen was negative." Those patient notes were printed on August 15, 2020, and they were sent to the defense at some point as part of the discovery in this case. Additionally, on April 29, 2021, the state's attorney's office received a report from the University of Illinois Chicago Analytical Forensic Testing Laboratory. This report was dated March 12, 2021. According to this report, defendant's urine showed "a total delta-9-tetrahydrocannabinol *** detected at a concentration of 1.5 plus or minus 0.2 nanograms per milliliter." Defendant's urine also showed "a total 11-hyrdoxy-delta-9-tetrahydrocannabinol metabolite detected at a concentration of 11.9 plus or minus 1.8 nanograms per milliliter."

¶ 17        The court asked defense counsel whether he wanted to make the documents referenced by the prosecutor "part of the record." Defense counsel responded that he was "not asking that they be made part of the record," and he objected to the Blessing Hospital drug

screening results as being irrelevant. In responding to defense counsel's objection, the prosecutor argued that this information was relevant because part of the information the prosecution had when making charging decisions in August 2020 was that defendant's "drug screen [was] negative based on an initial report from the hospital." Before ruling on the objection, the court asked defense counsel whether he disputed the prosecutor's representations regarding the contents of the two records. Defense counsel responded: "I do not have a dispute with respect to what the document says." The court overruled defendant's relevance objection. The court then asked defense counsel whether he would like "the documents themselves [to] be admitted in lieu of [the prosecutor's] avow." Defense counsel responded that he accepted the avow. Consequently, neither the August 14, 2020, Blessing Hospital record nor the March 12, 2021, University of Illinois Chicago laboratory report are in the record on appeal.

¶ 18 The parties agreed that the dispositive issue was whether count XVII was subject to compulsory joinder with the charges the State originally filed in August 2020. On that issue, the parties disputed only whether the offense of aggravated DUI was "known to the proper prosecuting officer at the time of commencing the prosecution" in August 2020. 720 ILCS 5/3-3(b) (West 2020).

¶ 19 In arguing that the aggravated DUI charge was known in August 2020, defense counsel argued that the court should consider both what the investigating officers knew and what the state's attorney's office knew. Defense counsel emphasized that defendant admitted to having used cannabis and that Cirrincione wrote defendant a citation for aggravated DUI.

¶ 20 The prosecutor responded that the state's attorney's office, not police officers, makes charging decisions. According to the prosecutor, even though Cirrincione wrote a citation for aggravated DUI, the state's attorney did not "file" it, as there was not "a reasonable chance to

secure a conviction based on the information we had." The prosecutor proposed that an officer's suspicion of DUI does not constitute "knowledge" for purposes of compulsory joinder until the State receives evidence of a positive drug test. According to the prosecutor, upon receiving defendant's positive THC results, there was no time limit for charging defendant with aggravated DUI, so long as the charge was filed within the statute of limitations. The prosecutor further noted that defendant gave conflicting information to the police about whether she was under the influence at the time of the collision. The prosecutor added that "we had a drug screen from Blessing Hospital that said she was negative."

¶ 21 After taking the matter under advisement, on April 1, 2022, the court granted defendant's motion to dismiss count XVII. The court first noted that count XVII may contain a scrivener's error, as it cited a subsection of the DUI statute pertaining to alcohol rather than THC. Nevertheless, because both the parties' arguments and the factual allegations asserted in count XVII related to THC, the court's ruling focused on THC.

¶ 22 The court made factual findings. Specifically, the court determined that "there was no suggestion that the State was not aware," "at the time the initial charges were filed," of (1) "all the information contained in paragraph 14" of defendant's amended motion to dismiss, "especially paragraph 14(A)"; (2) "the attachment thereto" (*i.e.*, Cirrincione's police report and the unfiled citation for aggravated DUI); and (3) "the other evidence set forth at the hearing." Additionally, having reviewed the court file, the court determined that the State never requested any "extensions of [the] speedy-trial period to obtain additional evidence or confirm any preliminary information." See 725 ILCS 5/103-5(c) (West 2020) (allowing a court to extend the speedy-trial term by 60 days where "the State has exercised without success due diligence to obtain evidence material to the case" and "there are reasonable grounds to believe that such evidence may be obtained at a later

- 8 -

day"). Furthermore, the court noted that there was "a significant amount of time" between when the State received defendant's positive THC results and when the State filed count XVII.

¶ 23    The court discussed multiple cases cited by the parties and applied the law to the facts at hand. Ultimately, the court found that "the evidence established the State's awareness of the possibility of a charge similar to the ones [*sic*] set forth in count 17 at the time of the initial commencement of the prosecution." Accordingly, the court found that the State's knowledge "trigger[ed] the requirements of compulsory joinder." The court added that "due diligence and the ability to seek extension of speedy trial timelines would have afforded the State other avenues under the law to pursue additional information if [the State] required more time to obtain that information." Because the court determined that count XVII was subject to compulsory joinder with the original charges, the court dismissed count XVII on speedy-trial grounds.

¶ 24    The State filed a certificate of impairment and a timely notice of appeal. See Ill. S. Ct. R. 604(a) (eff. July 1, 2017) (allowing the State to appeal an order dismissing a charge on speedy-trial grounds).

¶ 25                                II. ANALYSIS

¶ 26    The State argues that count XVII was not subject to compulsory joinder with the charges filed in August 2020, as the State was not consciously aware in August 2020 of evidence sufficient to give a reasonable chance to secure defendant's conviction for aggravated DUI. According to the State, it would have been "borderline reckless" to charge defendant with aggravated DUI in August 2020 because the initial hospital drug screening "refuted that charge." Without citing the record, the State asserts that the initial drug screening "showed defendant was negative for THC." (Emphasis omitted.) Without citing the record, the State also asserts that defendant's "secondary drug screen," which was positive for THC, came as "a surprise to the

prosecutor" and prompted the filing of count XVII. The State maintains we should review the trial court's judgment *de novo* because "the facts are not in dispute."

¶ 27   Defendant responds that we may affirm the judgment on either of two bases. Defendant primarily contends that the record supports a finding that the state's attorney was consciously aware of evidence in August 2020 that gave the State a reasonable chance to secure defendant's conviction for aggravated DUI. Alternatively, defendant contends that compulsory joinder applies "to any offense whose commission may be established by *conduct* [(as opposed to evidence)] known to the proper prosecuting officer at the time of commencing the prosecution." (Emphasis added.) Defendant asks us to review the first portion of her argument for an abuse of discretion, as the appeal involves factual disputes about " 'what the State knew and when the State knew it.' " With respect to defendant's alternative argument, she contends that *de novo* review is warranted insofar as her analysis presents an issue of statutory construction. However, defendant proposes that we should review the trial court's ultimate ruling on the motion to dismiss for an abuse of discretion. In presenting her arguments, defendant insists that the record does not support the State's conclusions that (1) defendant was tested for THC in her initial drug screening at Blessing Hospital or (2) any State agent knew the results of that initial drug screening before August 17, 2020, when the first information was filed.

¶ 28   We determine that our review is bifurcated. We review the trial court's factual findings under the manifest-weight-of-the-evidence standard, but we review *de novo* the ultimate issue of whether the State violated defendant's right to a speedy trial. *People v. Sykes*, 2017 IL App (1st) 150023, ¶ 35.

¶ 29                    A. Lack of Clarity in the Record

¶ 30   We first note some points that are not clear from the record.

- 10 -

¶ 31    In presenting its argument, the State relies heavily on defendant's initial negative drug screening at Blessing Hospital on August 14, 2020. As defendant correctly points out, the record does not establish whether defendant was tested for THC in that drug screening. In its reply brief, the State argues that defendant waived this claim by accepting the prosecutor's avow and objecting to the report being entered into the record. The State invokes principles of invited error and acquiescence. We reject the State's argument. A party is estopped from " 'request[ing] to proceed in one manner and then later contend[ing] on appeal that the course of action was in error.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)). In a similar vein, a party may not "claim error in the procedure employed by the court" if that party "willingly participated" in that procedure "without objection." *People v. Schmitt*, 131 Ill. 2d 128, 137 (1989). Here, defendant is not challenging any ruling or procedure in this appeal, let alone a ruling or procedure which she invited or to which she acquiesced. Moreover, the prosecutor made certain representations to the court in an "avow," and defense counsel merely accepted those representations after the court overruled a relevance objection. The defense did not prevent the prosecutor from specifying in his avow whether defendant was tested for THC in her August 14, 2020, initial drug screening at Blessing Hospital. Accordingly, this matter is distinguishable from the cases the State cites where parties were estopped from challenging judgments based on invited errors. See *Schmitt*, 131 Ill. 2d at 137 (where an appellant willingly participated in a simultaneous trial with his codefendant, he could not argue on appeal that the trial court should have severed the trials); *People v. Aquisto*, 2022 IL App (4th) 200081, ¶¶ 53-54 (where defense counsel told the trial court that the defense had no objection to admitting an exhibit, the defendant could not argue on appeal that there was an inadequate chain of custody to admit this exhibit).

¶ 32          Cirrincione's testimony about the initial Blessing Hospital drug screening likewise was ambiguous. On cross-examination by the prosecutor, Cirrincione said this drug screening was "negative," but he did not specify whether it was negative for THC. Cirrincione then added that "[t]hey don't quantify it," though it is not apparent what he meant by this. The prosecutor asked Cirrincione whether a subsequent laboratory report generated by the University of Illinois Chicago "had a different result," and Cirrincione responded, "Correct." The prosecutor did not ask, and Cirrincione did not explain, what "a different result" meant. It could be interpreted to mean that the initial screening performed at Blessing Hospital showed that defendant was negative for THC, whereas subsequent testing showed that defendant was positive for THC. (If that is the case, the prosecution has never attempted to justify the contradictory results.) Alternatively, "a different result" could be interpreted to mean that defendant initially tested negative for drugs at Blessing Hospital without being tested for THC, whereas she was subsequently tested for THC and tested positive for it.

¶ 33          Furthermore, the record is not clear exactly when law enforcement personnel or the state's attorney's office learned of defendant's initial negative drug screening. Cirrincione testified that he learned of the results of that drug screening when the state's attorney made a public statement on an unspecified date. Some of the prosecutor's comments during the hearing on defendant's amended motion to dismiss count XVII suggest that the state's attorney's office was aware of the initial drug screening results before prosecutors made any charging decisions.

¶ 34          We also note that the record is not clear as to how many times defendant was drug-tested after the collision. From the evidence introduced at the hearing on defendant's amended motion to dismiss count XVII, it would seem there were only two tests: (1) Blessing Hospital's test, the results of which were known almost immediately, and (2) another test that was

submitted on an unknown date to the University of Illinois Chicago Analytical Forensic Testing Laboratory, the results of which were not known to the state's attorney until April 29, 2021. However, a December 9, 2020, law enforcement sworn report—which is included in the record but not discussed at the hearing on defendant's amended motion to dismiss count XVII—suggests there may have been a third test. Specifically, this law enforcement sworn report indicates defendant was chemical tested pursuant to section 11-501.2 of the Illinois Vehicle Code (625 ILCS 5/11-501.2 (West 2020)) at 7 p.m. on August 14, 2020. According to this report, defendant's test revealed "a-delta 9-tetrahydrocannabinol concentration of either 5 nanograms or more of whole blood or 10 nanograms or more of other bodily substance." Thus, defendant was drug-tested either two or three times. Given that a document in the record from December 2020 shows that defendant tested positive for THC, it is not clear why the prosecutor claimed he did not know about defendant's positive results until April 29, 2021.

¶ 35    Moreover, at the January 28, 2022, hearing on defendant's amended motion for a continuance of the trial, the prosecutor told the court that part of the basis for count XVII was information that came to light "two weeks ago." The prosecutor did not specify what that information was. At the subsequent hearing on defendant's amended motion to dismiss count XVII, the State did claim that it received information pertinent to count XVII in January 2022.

¶ 36    Having noted the areas where the record is unclear, we will now address the parties' arguments.

¶ 37                          B. Speedy-Trial Violation

¶ 38    Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)) provides, in relevant portion, as follows:

- 13 -

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."

"The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial." *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). If a defendant is not tried within the requisite period, such defendant "shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103-5(d) (West 2020).

¶ 39 "Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). "Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *Williams*, 204 Ill. 2d at 198. In that situation, principles of compulsory joinder enter the equation. *Williams*, 204 Ill. 2d at 198.

¶ 40 Section 3-3 of the Criminal Code of 2012 addresses joinder of charges:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) *If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution* and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Emphasis added.) 720 ILCS 5/3-3 (West 2020).

If charges are subject to compulsory joinder with charges filed previously, " 'the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges.' " *Williams*, 204 Ill. 2d at 201 (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)). Additionally, " '[c]ontinuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " (Emphasis omitted.) *Williams*, 204 Ill. 2d at 201 (quoting *Williams*, 94 Ill. App. 3d at 249). Thus, it is possible that a trial involving multiple charges can be timely as to certain counts and untimely as to others. This premise has come to be known as the "*Williams* rule." *Sykes*, 2017 IL App (1st) 150023, ¶ 38.

¶ 41      Here, the parties dispute whether the offense of aggravated DUI was "known to the proper prosecuting officer at the time of commencing the prosecution." 720 ILCS 5/3-3(b) (West 2020). The state's attorney's office is the proper prosecuting officer. *People v. Pohl*, 47 Ill. App. 2d 232, 241 (1964). For purposes of section 3-3(b), " 'knowledge' or 'known to the proper prosecuting officer' means the conscious awareness of evidence that is sufficient to give the State a reasonable chance to secure a conviction." *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 78. "When the State has that awareness necessarily defies universal definition, and thus it must be determined on a case-by-case basis." *Luciano*, 2013 IL App (2d) 110792, ¶ 78. Depending on the facts of the case, the State's knowledge of the possibility of charges may be sufficient to trigger

compulsory joinder. *People v. Thomas*, 2014 IL App (2d) 130660, ¶ 24; *People v. Dismuke*, 2013 IL App (2d) 120925, ¶ 22.

¶ 42    We first consider the trial court's factual findings. The court found that "there was no suggestion that the State was not aware," "at the time the initial charges were filed," of (1) "all the information contained in paragraph 14" of defendant's amended motion to dismiss, "especially paragraph 14(A)" (see *supra* ¶ 9); (2) "the attachment thereto" (*i.e.*, Cirrincione's police report and the unfiled citation for aggravated DUI) (see *supra* ¶ 10); and (3) "the other evidence set forth at the hearing." We determine this finding is not against the manifest weight of the evidence, as the prosecutor never denied contemporaneous knowledge of the details of the police investigation.

¶ 43    Additionally, having reviewed the court file, the trial court determined that the State never requested any extensions of the speedy-trial period "to obtain additional evidence or confirm any preliminary information." This finding is not against the manifest weight of the evidence, as the record confirms that the State never requested an extension of the speedy-trial period.

¶ 44    Finally, the court noted that there was "a significant amount of time" between when the State received defendant's positive THC results and when the State filed count XVII. This finding is not against the manifest weight of the evidence. The state's attorney's office learned of defendant's positive THC results by April 29, 2021, at the latest, yet the State did not charge defendant with count XVII until January 11, 2022.

¶ 45    Turning to the application of the facts to the law, the parties cite two cases addressing the knowledge requirement of the compulsory-joinder statute in the context of a DUI prosecution. These two cases reached opposite conclusions and were driven by their own facts.

¶ 46    In *Thomas*, the defendant was involved in a motor vehicle collision on May 15, 2012. *Thomas*, 2014 IL App (2d) 130660, ¶ 3. A police officer who interacted with the defendant

at the scene believed that the defendant was under the influence of alcohol. *Thomas*, 2014 IL App (2d) 130660, ¶ 4. At the hospital, a nurse told this officer that the defendant's blood-alcohol concentration (BAC) exceeded 0.08. *Thomas*, 2014 IL App (2d) 130660, ¶ 4. The defendant was released from the hospital that same night, at which time he was charged with two traffic offenses and one count of DUI (alcohol impairment). *Thomas*, 2014 IL App (2d) 130660, ¶ 3. On November 29, 2012, the State received hospital records, which included a blood analysis confirming that the defendant's BAC exceeded 0.08. *Thomas*, 2014 IL App (2d) 130660, ¶¶ 5, 25. On June 7, 2013—three days before the scheduled trial—the State requested leave to file an information charging the defendant with DUI (BAC exceeding 0.08). *Thomas*, 2014 IL App (2d) 130660, ¶ 6. The court allowed the State to file this charge but later granted the defendant's motion to dismiss the charge on speedy-trial grounds. *Thomas*, 2014 IL App (2d) 130660, ¶¶ 6-7. The court determined that the charge of DUI (BAC exceeding 0.08) was subject to compulsory joinder with the original charge of DUI (alcohol impairment). *Thomas*, 2014 IL App (2d) 130660, ¶ 7. The court denied the State's motion to reconsider that ruling, and the State appealed. *Thomas*, 2014 IL App (2d) 130660, ¶ 9.

¶ 47        The appellate court affirmed. In doing so, the court rejected the State's argument that it could not charge the defendant with DUI (BAC exceeding 0.08) until it received the medical records. *Thomas*, 2014 IL App (2d) 130660, ¶ 23. The court emphasized that a police officer knew in May 2012, based on his conversation with a nurse, that the defendant's BAC exceeded 0.08, and the officer documented that information in his reports. *Thomas*, 2014 IL App (2d) 130660, ¶ 25. Accordingly, the State was not entitled to file a new charge almost 13 months after the officer learned of the defendant's BAC and more than 6 months after the State received confirmation of that BAC from medical records. *Thomas*, 2014 IL App (2d) 130660, ¶ 25.

¶ 48        In *Sykes*, the defendant drove her car into a wall on August 19, 2013, and she was briefly knocked unconscious. *Sykes*, 2017 IL App (1st) 150023, ¶ 6. At the scene, the defendant's speech was slurred, she told a paramedic she drank "some alcohol," and an officer smelled a "slight odor" of alcohol on the defendant. *Sykes*, 2017 IL App (1st) 150023, ¶ 6. There were no alcohol bottles or drugs recovered either from the defendant's person or her car. *Sykes*, 2017 IL App (1st) 150023, ¶ 6. At the hospital, the defendant seemed to be in an "altered mental state," as she was unaware of the date or the time of day. *Sykes*, 2017 IL App (1st) 150023, ¶ 7. An officer suspected that the defendant was "under the influence of something." *Sykes*, 2017 IL App (1st) 150023, ¶ 7. This officer overheard the defendant tell a nurse that she had one alcoholic drink that evening. *Sykes*, 2017 IL App (1st) 150023, ¶ 7. However, the defendant denied to this officer that she had been drinking or taking drugs. *Sykes*, 2017 IL App (1st) 150023, ¶ 7. The officer arrested the defendant for DUI, "based on the odor of alcohol, slurred speech, bloodshot eyes, and overall demeanor." *Sykes*, 2017 IL App (1st) 150023, ¶ 7.

¶ 49        A doctor at the hospital ordered blood and urine tests, which were sent to the hospital's laboratory for analysis. *Sykes*, 2017 IL App (1st) 150023, ¶¶ 8-9. Those tests showed that the defendant was within the legal limit for alcohol but that her urine tested presumptively positive for cannabis and phencyclidine. *Sykes*, 2017 IL App (1st) 150023, ¶ 9. A nurse told the defendant about those results, but the record did not reflect whether a police officer overheard that conversation. *Sykes*, 2017 IL App (1st) 150023, ¶ 9. The defendant was discharged from the hospital into police custody, and she was charged with endangering the life of a child, DUI (alcohol impairment), and an ordinance violation for damaging city property. *Sykes*, 2017 IL App (1st) 150023, ¶ 10.

¶ 50        The State subpoenaed the defendant's medical records but did not receive them (including the evidence of the positive drug results) until February 24, 2014. *Sykes*, 2017 IL App (1st) 150023, ¶ 13. On April 4, 2014, the State added two new charges against the defendant: DUI (drugs) and DUI (cannabis). *Sykes*, 2017 IL App (1st) 150023, ¶ 11. The trial court denied the defendant's motion to dismiss the new charges on speedy-trial grounds. *Sykes*, 2017 IL App (1st) 150023, ¶¶ 12-13. Following a trial, the defendant was convicted of DUI (cannabis) and endangering the life of a child, but she was acquitted of the other charges. *Sykes*, 2017 IL App (1st) 150023, ¶ 16. The court sentenced the defendant to supervision. *Sykes*, 2017 IL App (1st) 150023, ¶ 16. The defendant appealed, arguing, *inter alia*, that the trial court erred in denying her motion to dismiss the DUI (cannabis) charge.

¶ 51        The appellate court affirmed the judgment, holding that the DUI (cannabis) charge was not subject to compulsory joinder with the originally filed charges. *Sykes*, 2017 IL App (1st) 150023, ¶ 45. The court reasoned that a police officer's mere suspicion that the defendant was under the influence of drugs "would not, without the results of the urine test, have been enough to give the State a reasonable chance to secure a conviction." *Sykes*, 2017 IL App (1st) 150023, ¶ 42. The court also noted that the State did not try to ambush the defendant with any new charge. *Sykes*, 2017 IL App (1st) 150023, ¶ 44. To the contrary, the record showed that the State made it known from the outset of the prosecution that it was attempting to obtain the defendant's medical records, and the State encountered difficulties obtaining those records. *Sykes*, 2017 IL App (1st) 150023, ¶¶ 43-44. Additionally, upon receiving the medical records, the State "filed the new charges at the next court date." *Sykes*, 2017 IL App (1st) 150023, ¶ 44.

¶ 52        The facts here are distinguishable from both *Thomas* and *Sykes*. Unlike in *Thomas*, the arresting officers here did not have any indication from hospital staff on the date of the collision

that defendant tested positive for any substance. But unlike in *Sykes*, the officers' suspicions that defendant was under the influence of something were contemporaneously corroborated by defendant's inculpatory statements to an officer.

¶ 53　　　　　Based on the record—including the ambiguities that we detailed above—we determine the trial court properly ruled that the aggravated DUI charge in count XVII was subject to compulsory joinder with the originally filed charges. In August 2020, the state's attorney's office knew that (1) defendant was involved in a motor vehicle collision that killed four people, (2) two officers who observed defendant after the accident believed she was under the influence of something, (3) defendant told an officer she used cannabis approximately five minutes before driving but then gave conflicting statements as to whether she was "under the influence" of cannabis, and (4) an officer wrote defendant a citation for aggravated DUI. The only fact potentially weighing against compulsory joinder was the initial negative drug screening at Blessing Hospital. However, as explained above, even assuming the State was aware of the results of that screening when the prosecution commenced, the record does not indicate whether defendant was tested for THC in that screening. Moreover, irrespective of the hospital's screening, authorities apparently continued to suspect that defendant was under the influence of something, as one (and possibly two) samples taken from defendant were submitted at unknown points for additional testing. The State learned by April 29, 2021, at the latest, that one of defendant's samples tested positive for THC. Nevertheless, the State did not charge defendant with aggravated DUI until January 11, 2022—one month before the scheduled trial. We note that when the State filed this charge, the State was seeking an extension of the discovery deadline while defendant demanded a speedy trial.

¶ 54   The State possessed strong evidence before the prosecution commenced that defendant drove under the influence of THC. This evidence, which included the officers' observations of defendant after the collision and defendant's inculpatory statements, was "sufficient to give the State a reasonable chance to secure a conviction." *Luciano*, 2013 IL App (2d) 117092, ¶ 78. At the very least, the State "knew of the possibility" (*Dismuke*, 2013 IL App (2d) 120925, ¶ 22) of an aggravated DUI charge at the commencement of defendant's prosecution. Obviously, the State may have wanted additional evidence of a positive drug test before it proceeded to trial on an aggravated DUI charge. The speedy-trial statute would have allowed the State to file the charge and then request additional time to complete testing. 725 ILCS 5/103-5(c) (West 2020). What the State could not do was "ignore the speedy-trial statute" (*Dismuke*, 2013 IL App (2d) 120925, ¶ 23) by waiting to charge defendant with aggravated DUI until more than eight months after the prosecutor learned that laboratory testing confirmed what officers suspected all along and what defendant admitted. We hold that the proper prosecuting officer knew of the aggravated DUI charge when defendant's prosecution commenced in August 2020. Accordingly, count XVII was subject to compulsory joinder with the originally filed counts. Pursuant to the "*Williams* rule," the delays attributable to defendant on the originally filed counts were not attributable to her on count XVII. Because the State did not bring defendant to trial on count XVII within the speedy-trial period, the trial court properly dismissed this count.

¶ 55   Defendant presents an alternative argument advocating for a new standard for assessing the State's "knowledge" for purposes of compulsory joinder. Specifically, defendant proposes that we should reject the standard first articulated in *Luciano—i.e.*, that " 'knowledge' or 'known to the proper prosecuting officer' means the conscious awareness of evidence that is sufficient to give the State a reasonable chance to secure a conviction." *Luciano*, 2013 IL App (2d)

110792, ¶ 78. Defendant asserts that the standard instead should be that compulsory joinder applies "as to any offense whose commission may be established by *conduct* known to the proper prosecuting officer at the time of commencing the prosecution." (Emphasis added.) Having affirmed the judgment under the standard articulated in existing case law, we need not address defendant's alternative argument.

¶ 56                                III. CONCLUSION

¶ 57        For the reasons stated, we affirm the trial court's judgment.

¶ 58        Affirmed.

*People v. McBride*, 2022 IL App (4th) 220301

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, No. 20-CF-500; the Hon. Amy C. Lannerd, Judge, presiding. |
| **Attorneys for Appellant:** | Gary L. Farha, State's Attorney, of Quincy (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Catherine K. Hart, and Amy J. Kemp, of State Appellate Defender's Office, of Springfield, for appellee. |