2024 IL App (4th) 230208

NO. 4-23-0208

Rule 23 filed August 2, 2024

Modified upon denial of Rehearing
September 3, 2024

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| JOHN RESOR, | ) | No. 22CF68 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles H.W. Burch, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant John Resor appeals his October 13, 2022, conviction on one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2022)) and two counts of aggravated battery (*id.* § 12-3.05(c)), for which he was given concurrent sentences of 14, 10, and 10 years in prison, respectively. On appeal, defendant argues that (1) his convictions on counts 2 and 3 (aggravated battery) should be vacated because the State violated his right to a speedy trial by not filing those charges until more than 120 days after he was initially placed in custody, (2) the verdict on all three counts should be set aside because one of the jurors was unqualified to serve, and (3) the trial court erred in ordering $150 in restitution.

¶ 2        We affirm in part, reverse in part, and vacate the restitution portion of defendant's sentence.

¶ 3                              I. BACKGROUND

¶ 4                            A. Initial Charge

¶ 5        On March 21, 2022, defendant was charged by information with aggravated domestic battery. *Id.* § 12-3.3(a-5). The State specifically alleged that defendant, "while committing a domestic battery *** intentionally strangled Kristen Crabtree, a family or household member of the defendant," on or about March 19. He was taken into custody on March 21.

¶ 6                          B. Initial Appearance

¶ 7        At the initial appearance hearing on March 21, 2022, the State proffered Pike County Sheriff's Deputy Steve Snyder's report dated March 19, 2022, in support of a finding of probable cause. Snyder's report related that he had responded to a call for an alleged domestic disturbance. Snyder found the victim, Kristen Crabtree, "lying on the living room floor sobbing uncontrollably" and noted that Heather Campbell, a noninvolved bystander, had witnessed some of the altercation. The report related that Crabtree had told the officer "that while walking on the west side of the square in Barry [defendant] had attacked her from behind and was 'slam choking' her before Campbell arrived." Campbell informed Deputy Snyder that she had heard "yelling coming from across the park" and that she had "proceeded across the park to the northwest and found [defendant] to have Crabtree pinned up against a building, on the west side of the square in Barry, with his hands around Crabtree's neck and it appeared that [defendant] was attempting to strangle Crabtree." Campbell told Snyder that, "as she approached [defendant] and Crabtree that [defendant] let go of Crabtree's throat and it seemed like [defendant's] attention was drawn to something else."

¶ 8        An incident report, also prepared by Deputy Snyder, added that Campbell had told Deputy Snyder that she "found [defendant] to have Crabtree pinned up against the glass window

of a building, on the west side of the square." It further added that Crabtree had told Deputy Snyder that defendant had run "up behind her and began choke-slamming her against the pole in front of the building."

¶ 9 The trial court found the existence of probable cause to hold defendant, but it continued the hearing to address bond after a risk assessment was available.

¶ 10 C. March 25, 2022, Continued Hearing

¶ 11 At the continued hearing to address bond, the State introduced the March 24, 2022, risk assessment, which reiterated Campbell's comment that she found defendant "to have Crabtree pinned up against a building, on the west side of the square in Barry with his hands around Crabtree's neck" and that it appeared defendant "was attempting to strangle Crabtree." As this hearing occurred prior to the elimination of cash bail in Illinois, the trial court set a cash bond in the amount of $75,000.

¶ 12 D. April 19, 2022, Preliminary Hearing

¶ 13 Testifying at the preliminary hearing, Deputy Snyder said he found Campbell and the victim when he arrived at Campbell's residence. Campbell informed him that defendant had choked Crabtree, and she related the following description of the events:

> "She stated that she heard yelling and screaming coming from across the square in the park there in Barry. She ran over there because her kid, one of her sons had been into it with another juvenile, and she assumed they were fighting over there. So she ran across the park, the square ***, but she stated that when she arrived there she witnessed a male, later to be identified as [defendant], with his hands around Kristen's neck up against one of the buildings."

Crabtree told Snyder that she had left a nearby residence and was "walking with her juvenile kids. And when they got around the west side of the square that [defendant] had came up behind her, and she described it as slammed, choking her against the pole and the building." Snyder acknowledged finding red marks around her neck and upper chest area and a red mark and bruise on the inside of her left bicep.

¶ 14　　　At the conclusion of the hearing, the trial court found probable cause that the offense was committed by defendant.

¶ 15　　　　　　　　　　　E. Additional Charges Filed

¶ 16　　　On September 19, 2022, the State filed three additional charges: count 2 alleged that defendant, in committing a battery, "while Kristen Crabtree was on or about a public way, knowingly made physical contact of an insulting or provoking nature with Kristen Crabtree, in that said defendant pushed [Crabtree] against a pole, on or about March 19, 2022," in violation of section 12-3.05(c) of the Criminal Code of 2012 (*id.* § 12-3.05(c)). Count 3 alleged that defendant, in committing a battery, "and while Kristen Crabtree was on or about a public way, knowingly made physical contact of an insulting or provoking nature with *** Crabtree, in that said defendant pushed *** Crabtree against a glass window," on the same date, in violation of section 12-3.05(c) (*id.*). Count 4 alleged aggravated battery involving another individual, E.L.F., a minor, who was with Crabtree at the time (*id.*).

¶ 17　　　　　　　　　　F. Hearing on Motion *in Limine*

¶ 18　　　A hearing was held on October 3, 2022, on the State's motion *in limine* to admit responding officer Snyder's body camera video of his initial interaction with Crabtree on March 19, 2022. The body camera video, which was designated as People's exhibit 1, was authenticated by Deputy Snyder. The video depicted much of what was testified to by Deputy Snyder at the

- 4 -

earlier hearings, but it also contained statements from Crabtree that she had been walking with three 13-year-old girls: "We were just walking and he came up and just started choke slamming me against the wall." Campbell, who was also on the video, stated that when she arrived, Crabtree "was up against the glass on the building" on the other side of the square.

¶ 19                                G. Jury Selection

¶ 20        Jury selection took place on October 11, 2022. Initially, one juror, Steven Moesch, indicated that he knew defense counsel.

> "THE COURT: Mr. Moesch, how do you know [defense counsel]?
>
> MR. MOESCH: He represented me in a case earlier this year.
>
> THE COURT: And as far as his representation of you, is that concluded?
>
> MR. MOESCH: Yes.
>
> THE COURT: Okay. So the case is over with. And is there anything about your prior attorney/client relationship with [defense counsel] that would affect your ability to be fair and impartial in listening to the evidence if selected to serve as a juror in this case, sir?
>
> MR. MOESCH: No, sir."

¶ 21        Later during jury selection, the trial court learned that Moesch was serving a sentence of probation following a conviction on an unspecified drug-related offense. According to the exchange:

> "[THE COURT]: Except for a minor traffic case, have any of you in the second row ever been a defendant in a criminal case or charged with a crime?
>
> MR. MOESCH: Yes.
>
> THE COURT: All right. Okay. Somebody said yes.

(Hand raised.)

All right. Mr. Moesch, you have been?

MR. MOESCH: Yes, sir.

THE COURT: Was that here in this county?

MR. MOESCH: Yes, sir.

THE COURT: And was that case earlier this year?

MR. MOESCH: Yes, sir.

THE COURT: What was the nature of that case, sir?

MR. MOESCH: Drugs.

THE COURT: Okay. That case as you indicated earlier, that case is over with, correct?

MR. MOESCH: Yes, sir.

THE COURT: Are you currently on probation?

MR. MOESCH: Probation.

THE COURT: You're on probation presently?

MR. MOESCH: Yes, sir.

THE COURT: In this county?

MR. MOESCH: Yes, sir.

THE COURT: Well, I will ask you, having gone through that experience, such as it may be or may have been, is there—with having gone through that, would that affect your ability to be fair and impartial if selected as a juror to hear the evidence in this case, sir?

MR. MOESCH: No, sir, it would not."

¶ 22 The trial court then asked the prospective panel, "If picked as a juror, will you follow the law as it is given to you without regard to your own personal feelings about the law? Will you all do that?" The court then stated, "All have indicated in the affirmative." It further asked the prospective panel, "If, after you have heard everything, the evidence, the arguments, and the instructions on the law, if you believe that the State has proven the defendant's guilt beyond a reasonable doubt, will you find the defendant guilty?" Potential juror Moesch answered, "Yes." Finally, the court asked the prospective panelists, "Conversely, if after you've heard everything and you do not believe that the State has proven the defendant's guilt beyond a reasonable doubt, will you find the defendant not guilty?" Again, Moesch answered, "Yes."

¶ 23 No objection was voiced concerning Moesch's ability to serve, and he was eventually accepted as a juror.

¶ 24 H. Trial, Verdict, and Sentencing

¶ 25 The case proceeded to trial on October 11, 2022; this was more than 200 days after defendant was first arrested and taken into custody, where he remained for the entire pretrial period. Defendant's counsel did not lodge a speedy trial objection. On October 13, the jury returned a verdict of guilty on counts 1 (aggravated domestic battery), 2 (aggravated battery), and 3 (aggravated battery) but found defendant not guilty on count 4 (aggravated battery against E.L.F.). On November 30, defendant was sentenced to 14 years in prison on count 1 and 10 years each on counts 2 and 3, with all sentences to be served concurrently.

¶ 26 Defendant filed a timely posttrial motion to reconsider his sentence, which was denied on February 27, 2023. A timely notice of appeal was filed on March 10, 2023, and amended on March 20, 2023.

¶ 27 This appeal followed.

¶ 28                              II. ANALYSIS

¶ 29        We now examine the three issues raised on appeal by defendant.

¶ 30                          A. Right to Speedy Trial

¶ 31        Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2022)) provides that a continuously detained defendant must be tried within 120 days of being taken into custody, less only delays attributable to the defendant. *People v. Cross*, 2022 IL 127907, ¶ 20. Defendant was initially charged with one offense—aggravated domestic battery— and defendant does not contend this initial charge was brought to trial outside the applicable period, minus any delays attributable to him. Instead, defendant's argument is limited to the two aggravated battery charges, which were added nearly six months after the initial charge and about three weeks prior to the October 11, 2022, trial. Citing pertinent authority in support, defendant argues trial on the two new charges was required to commence within 120 days from the date he was taken into custody and that any delays he caused on the original charges are not deducted from this calculation.

¶ 32        Defendant acknowledges that trial counsel did not raise this speedy trial issue below, and his contention on appeal is that trial counsel was ineffective for failing to raise it. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial." *Id.* ¶ 19. "The failure to establish either prong is fatal." *People v. Keys*, 2023 IL App (4th) 210630, ¶ 59. With respect to the first requirement, an attorney's failure to seek the defendant's discharge on speedy trial grounds will generally be deemed ineffective assistance if there is a reasonable probability that a timely motion would have

been granted and no justification for the failure to file it has been proffered. *People v. Staten*, 159 Ill. 2d 419, 431 (1994).

¶ 33 "Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if there is no lawful basis for raising a speedy-trial objection," so "we must first determine whether defendant's right to a speedy trial was violated." *People v. Phipps*, 238 Ill. 2d 54, 65 (2010). "The remedy for ineffective assistance in this regard is the same as the remedy for any speedy trial violation found on appeal: outright reversal of the conviction or convictions in question." *People v. Isbell*, 2020 IL App (3d) 180279, ¶ 13.

¶ 34 Section 103-5(a)'s 120-day period commences automatically. *People v. McBride*, 2022 IL App (4th) 220301, ¶ 38. As this court explained in *McBride*, the addition of new charges brings a different wrinkle:

> " 'Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense.' [Citation.] 'Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times.' [Citation.] In that situation, principles of compulsory joinder enter the equation. [Citation.]" *Id.* ¶ 39.

Section 3-3 of the Criminal Code of 2012 addresses joinder of charges:

> "(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.
>
> (b) If the several offenses are *known to the proper prosecuting officer at the time of commencing the prosecution* and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), *if they are based on the same act*.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Emphases added.) 720 ILCS 5/3-3 (West 2022).

¶ 35　　　Where later-filed charges are subject to compulsory joinder with the original charges, " 'the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges.' " *People v. Williams*, 204 Ill. 2d 191, 201 (2003) (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)). Furthermore—and critically to the result here—any " '[c]ontinuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " (Emphasis omitted.) *Id.* (quoting *Williams*, 94 Ill. App. 3d at 248-49). "Thus, it is possible that a trial involving multiple charges can be timely as to certain counts and untimely as to others." *McBride*, 2022 IL App (4th) 220301, ¶ 40. This concept is sometimes referred to as the " '*Williams* rule.' " *Id.*

¶ 36　　　An appellate court conducts a *de novo* review to determine whether charges are subject to compulsory joinder and whether a defendant's statutory right to a speedy trial has been violated. *Id.* ¶ 28; *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009) (right to speedy trial); *People v. Woodrum*, 223 Ill. 2d 286, 300 (2006) (compulsory joinder).

¶ 37　　　　　　　　　　　　　　1. *Time to Trial*

¶ 38　　　Here, defendant was arrested and charged with aggravated domestic battery on March 21, 2022. After various delays—some attributable to the defense—trial on the case commenced more than 200 days later. Consequently, there is no dispute that defendant's trial occurred more than 120 days after he was arrested. Because defendant remained in continuous

custody from the date of his arrest through trial, we can conclude that he received a speedy trial on counts 2 and 3 only if the delays attributable to him on the original charges are also attributable to him on the subsequently filed counts 2 and 3. *People v. Sykes*, 2017 IL App (1st) 150023, ¶ 38.

¶ 39                    2. *The State's Knowledge of Other Charges*

¶ 40        Our first step under section 3-3(b) is to determine whether the facts underlying the offenses charged in counts 2 and 3 were "known to the proper prosecuting officer at the time of commencing the prosecution." 720 ILCS 5/3-3(b) (West 2022). In *McBride*, we noted that under section 3-3(b), " ' "knowledge" or "known to the proper prosecuting officer" means the conscious awareness of evidence that is sufficient to give the State a reasonable chance to secure a conviction.' " *McBride*, 2022 IL App (4th) 220301, ¶ 41 (quoting *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 78). "The state's attorney's office is the proper prosecuting officer." *Id.*; see *People v. Pohl*, 47 Ill. App. 2d 232, 241 (1964). Moreover, "[w]hen the State has that awareness necessarily defies universal definition, and thus it must be determined on a case-by-case basis." *Luciano*, 2013 IL App (2d) 110792, ¶ 78. "Depending on the facts of the case, the State's knowledge of the possibility of charges may be sufficient to trigger compulsory joinder." *McBride*, 2022 IL App (4th) 220301, ¶ 41 (citing *People v. Thomas*, 2014 IL App (2d) 130660, ¶ 24, and *People v. Dismuke*, 2013 IL App (2d) 120925, ¶ 22).

¶ 41        Clearly, the State possessed strong evidence at the time the prosecution commenced that defendant may have pushed or shoved Crabtree into the building or a nearby pole on a public way. See *id.* ¶ 54. According to the statements related in Deputy Snyder's probable cause report and his incident report, Campbell told police that defendant had Crabtree pinned against the building; she also told the deputy that defendant had Crabtree pinned against the glass, and Crabtree said that defendant "slammed" her against the pole and building. According to the body

camera video, defendant "came up and just started choke slamming me against the wall." Campbell was also recorded on the video stating that she found Crabtree "up against the glass on the building" on the other side of the square. This evidence was "sufficient to give the State a reasonable chance to secure a conviction." *Luciano*, 2013 IL App (2d) 110792, ¶ 78. At the very least, the State "knew of the possibility" (*Dismuke*, 2013 IL App (2d) 120925, ¶ 22) of an aggravated battery involving defendant pushing Crabtree into the building, the building's glass, and the pole.

¶ 42    All of this information was available to the State when it initially charged defendant in March 2022 or immediately thereafter, and it was sufficient to suggest that Crabtree was not only strangled but was shoved or pushed into the building (whether it was a wall or glass) and into a nearby pole. Thus, we conclude that the first requirement of section 3-3(b)—that the several offenses be known to the proper prosecuting officer at the time of commencing the prosecution—is satisfied. 720 ILCS 5/3-3(b) (West 2022). We now turn to the second requirement of section 3-3(b)—that the offenses be based on the same act. *Id.*

¶ 43                    3. *Same Act or Continuous Act*

¶ 44    Although the State contends that these were separate actions, thus justifying the filing of separate charges at different times, we disagree. Joinder of charges is not compulsory "where multiple offenses arise from a series of related acts," even if those acts are part of the same purpose or plan. *People v. Mueller*, 109 Ill. 2d 378, 385 (1985). "Thus, independent, overt acts that constitute different offenses are not required to be joined ***." *People v. Gooden*, 189 Ill. 2d 209, 219-20 (2000). To illustrate, in *Gooden*, our supreme court determined that the defendant committed multiple separate acts where he broke into a home, battered a woman, and then sexually assaulted her. *Id.* at 220.

¶ 45    By contrast, where a defendant engages in " 'only one continuous and uninterrupted act,' " compulsory joinder applies. *People v. Hunter*, 2013 IL 114100, ¶ 18 (quoting *People v. Quigley*, 183 Ill. 2d 1, 11 (1998)). As an example, compulsory joinder applies where the same act violates two different statutes. *Id.* It is irrelevant for purposes of compulsory joinder whether the subject charges have different elements. *Id.* ¶ 22. On interpreting what the phrase "the same act" means for purposes of the compulsory joinder statute, we find the supreme court's decision in *Hunter* instructive. There, the defendant was observed selling cannabis, and upon his arrest, he was found in possession of firearms. The State initially charged the defendant with possession of cannabis with the intent to deliver, but it did not immediately charge him with any offenses related to the firearms. *Id.* ¶¶ 3-5. Approximately six months after the defendant's arrest and his initial appearance on the single cannabis charge, the State indicted him for multiple firearm violations. *Id.* ¶ 6. According to the State, the firearm and cannabis charges were separate acts for purposes of joinder and could not be characterized as the "same act" requiring simultaneous prosecution. *Id.* ¶ 15.

¶ 46    On appeal, the Illinois Supreme Court noted that the purpose underlying compulsory joinder is "to prevent the prosecution of multiple offenses in a piecemeal fashion and to forestall, in effect, abuse of the prosecutorial process." (Internal quotation marks omitted.) *Id.* ¶ 18. The supreme court rejected "a hypertechnical interpretation to create multiple acts based on discrete moments in time." *Id.* In doing so, the State's position was that the joinder statute permitted it to file additional charges every few months, based on various categories of illegal items seized at the time of the execution of a search warrant. *Id.* ¶ 21. The supreme court labelled such a contention "absurd and unjust," noting the legislature intended the joinder statute "to prevent the successive prosecutions of multiple offenses described" in the State's hypothetical

assertion. *Id.* ¶¶ 24-25. Noting that the handguns and cannabis were "discovered during the same search, at the same place, and at the same time," the supreme court concluded that the compulsory joinder statute required the State to charge the defendant with the various offenses in a single prosecution because defendant had committed a single act for its purposes. *Id.* ¶ 27.

¶ 47          Here, the evidence shows that the purported attack consisted of several instances of pushing and shoving Crabtree—whether against a pole, the building, or the building's glass—and of strangulation. All these acts were committed by defendant, occurred within the same period of time, and involved the same victim. These charges are "entirely intermingled with each other" (*People v. Hawkins*, 2023 IL App (4th) 190882-U, ¶ 67); all charges were based on defendant's attack on Crabtree on a public sidewalk next to a building on the square in Barry, Illinois. Under these circumstances, defendant engaged in "one continuous and uninterrupted act" (*Quigley*, 183 Ill. 2d at 11), which requires us to apply compulsive joinder.

¶ 48          We conclude that defendant has established that trial counsel's representation fell below an objective standard of reasonableness. See *Keys*, 2023 IL App (4th) 210630, ¶ 59. Defense counsel should have raised the issue of a speedy trial violation and did not. To demonstrate ineffective assistance of counsel, a defendant must show the outcome of the trial would have been different if the speedy trial objection had been made and sustained. *People v. Jones*, 371 Ill. App. 3d 303, 307 (2007). Stated another way, "[t]o show prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 306. Because counsel did not raise the issue below, defendant was convicted of the two additional aggravated battery charges, which establishes the requisite prejudice. *Keys*, 2023 IL App (4th) 210630, ¶ 59. We conclude that defendant has established

ineffective assistance of counsel, and accordingly, the remedy here is to reverse the aggravated battery convictions on counts 2 and 3.

¶ 49                                    B. Juror Disqualification

¶ 50        Next, defendant argues that *all three* of his convictions should be vacated because one of the jurors, Moesch, was not qualified to serve. Specifically, defendant asserts that Moesch was serving a sentence of felony probation at the time of the trial, and he argues that this rendered Moesch ineligible to serve. We initially found that this issue was forfeited for failure to raise it below and that defendant failed to argue that it constituted plain error. Defendant's petition for rehearing notes that he did, in fact, invoke plain error in his reply brief. Defendant is correct that, under well-settled law, this adequately presents the issue for appellate review. *People v. Korzenewski*, 2012 IL App (4th) 101026, ¶ 16 (citing *People v. Williams*, 193 Ill. 2d 306, 348 (2000)). While we deny defendant's petition for rehearing for the reasons discussed below, we do so after undertaking analysis of his plain error argument.

¶ 51        The plain error rule allows a reviewing court to consider a trial error not properly preserved when "(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial." *People v. Byron*, 164 Ill. 2d 279, 293 (1995); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). A "plain error" is one that is "clear or obvious." *People v. Piatkowski*, 225 Ill. 2d 551, 565 n.2 (2007). As we explained in *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17, "[t]he plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error [must] be manifest or patent." In the second prong, prejudice to the defendant is presumed "because of the importance of the right involved, 'regardless of the strength of the evidence.' "

(Emphasis omitted.) *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (citing *People v. Blue*, 189 Ill. 2d 99, 138 (2000)). In both instances, the burden of persuasion remains with the defendant. *Id.*

¶ 52 The first analytical step under the plain error rule is to determine whether there was a clear or obvious error. *People v. Moon*, 2022 IL 125959, ¶ 22. We have difficulty finding a clear or obvious error on the part of the trial court for three separate reasons.

¶ 53 First, we find it far from clear whether Illinois law prohibits felons from sitting as jurors. The Jury Act (705 ILCS 305/2(a)(3) (West 2022)) provides that "Jurors must be: *** (3) *[f]ree from all legal exception*, of fair character, of approved integrity, of sound judgment, well informed, and able to understand the English language, whether in spoken or written form or interpreted into sign language." (Emphasis added.) Defendant argues that a prospective juror with a felony conviction is not "[f]ree from all legal exception." While the Third District decision in *Pournaras v. People*, 2018 IL App (3d) 170051, ¶ 15, gives superficial support to defendant's argument, it does so with little explanation of its rationale and in an entirely different legal context: eligibility for a firearm owner's identification card. With no caselaw directly on point, it is difficult to construe as a "clear" or "obvious" error a judge's finding that a felon on probation would be eligible to serve as a juror.

¶ 54 Second, the premise of the argument—that juror Moesch was on probation for a *felony* offense—is not established by the record. Plaintiff submitted with his reply brief a copy of an entry from an online court record showing that Moesch was, in fact, serving probation in relation to a felony charge, but this fails to advance the issue for defendant. The question here is whether the *trial court* erred in seating Moesch as a juror, an inquiry that must be made based on the information known to the trial court *at the time*; Moesch's alleged felony status was not a fact of record in the trial court. *Ruiz v. Walker*, 386 Ill. App. 3d 1080, 1081 (2008) (" 'The general rule is

- 16 -

that "material which was not part of the court record or considered by the trial court is not part of the record on appeal and should not be considered by the appellate court." ' " (quoting *Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public School District No. 172*, 291 Ill. App. 3d 221, 229-30 (1997), quoting *Smith v. First National Bank of Danville*, 254 Ill. App. 3d 251, 258 (1993))). Furthermore, while defendant asks us to take judicial notice of facts that were not presented to the trial court, the exercise does not produce the result he suggests. Taking judicial notice of the online court records of Moesch's cases, the record there shows that he was ordered to probation under the provisions of section 410 of the Illinois Controlled Substances Act (720 ILCS 570/410 (West 2022)), which permits the imposition of probation *without* a conviction; upon successful completion of probation, the case is dismissed without conviction. *Id.* In other words, Moesch was not, and is still not, a *convicted* felon.

¶ 55        Third, we note that the one person in the courtroom who likely knew the details of Moesch's criminal case was defendant's own lawyer, who coincidentally represented Moesch in his criminal case. Indeed, the criminal records defendant has asked us to judicially notice show that his lawyer represented Moesch at his sentencing hearing in May 2022, just five months prior to the trial in this case. Defense counsel's decision not to object to seating Moesch may well have been a matter of trial strategy based on the hope that Moesch might be especially open minded to a defendant represented by the same lawyer who had represented him. In *People v. Rosalez*, 2021 IL App (1st) 200086, ¶ 155, the court stated, "Even when a defendant shows plain error, he may be foreclosed from obtaining relief if he actively participated in the error as a matter of trial strategy." See *People v. Robinson*, 20 Ill. App. 3d 777, 783 (1974); *People v. Allen*, 2016 IL App (4th) 140137, ¶ 51 (finding plain error inappropriate when the issue involves trial strategy). Defendant's trial attorney having apparently accepted Moesch as a juror with this knowledge—

likely as a matter of strategy—it would be inappropriate to allow defendant to now employ plain error to resuscitate the issue.

¶ 56        Accordingly, we conclude there was no plain error in seating Moesch as a juror.

¶ 57                                C. Restitution

¶ 58        Finally, defendant argues that the trial court erred in awarding $150 in restitution, asserting that the State failed to present any evidence justifying the imposition of restitution. The State concedes this issue, stating: "The record shows that the State did not request restitution and the court never made findings to support restitution." Moreover, the State in its brief remarked, "the court did not appear to intend to order restitution" and "[i]t is likely that the order for restitution was a mistake." We agree. For these reasons, we vacate the trial court's order of restitution.

¶ 59                                III. CONCLUSION

¶ 60        For the reasons stated, we hereby (1) reverse the convictions on counts 2 and 3, (2) affirm the conviction on count 1, and (3) vacate the trial court's award of $150 in costs.

¶ 61        Affirmed in part, reversed in part, and vacated in part.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Pike County, No. 22-CF-68; the Hon. Charles H.W. Burch, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Ryan R. Wilson, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Walker R. Filbert, State's Attorney, of Pittsfield (Patrick Delfino, David J. Robinson, and Matthew S. Goldman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |