NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230241-U

NO. 4-23-0241

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| KEVIN L. BOYCE, | ) | No. 22CF683 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin W. Lyons, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court reversed defendant's conviction of unlawful possession of a
weapon by a felon because defendant was not tried within 120 days of his arrest.
Specifically, the delays that might be attributable to the defense on a previously
filed charge were not attributable to the defense on this later-filed charge, as the
two charges were subject to compulsory joinder. Defense counsel was ineffective
for failing to raise this point on defendant's behalf.

¶ 2     A Peoria County jury found defendant, Kevin L. Boyce, guilty of unlawful

possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)). The trial court sentenced

defendant to eight years in prison. Defendant appeals, arguing, *inter alia*, that he was not accorded

a speedy trial. For the following reasons, we reverse defendant's conviction.

¶ 3                                    I. BACKGROUND

¶ 4     We limit our recitation of the facts to what is necessary to understand the dispositive

issue.

¶ 5        On August 24, 2022, the State charged defendant by information with one count of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2022)). According to the information, on or about August 21, 2022, defendant, "in committing a battery, without legal justification did knowingly discharge a firearm, being a handgun[,] in the direction of Angela Smith[,] thereby causing an injury to Angela Smith by means of the discharging of said firearm," while at Smith's residence. Defendant remained in continuous custody since August 23, 2022.

¶ 6        The record shows that the prosecution was aware from the outset that defendant was a convicted felon. For example, at defendant's first court appearance on August 24, 2022, the prosecutor outlined defendant's criminal history. However, the State did not immediately charge defendant with unlawful possession of a weapon by a felon.

¶ 7        On September 6, 2022, a grand jury returned a one-count indictment that was substantively identical to the information. Defendant obtained private counsel and moved for a substitution of judge as of right. On September 26, 2022, defendant filed a written notice of his demand for a speedy trial.

¶ 8        On September 29, 2022, the trial court set the matter for a jury trial on November 14, 2022, with an intervening scheduling conference set for November 3, 2022. On November 3, the court rescheduled the trial to December 12, 2022.

¶ 9        On December 6, 2022, a grand jury indicted defendant for a second offense committed on or about August 21, 2022. Specifically, count II alleged that defendant committed the offense of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) "in that he knowingly had in his possession a firearm, being a handgun, and the defendant has been previously convicted of a felony, in this state, being unlawful possession of firearm ammunition by a felon, in Peoria County Case 2018 CF 182."

¶ 10        On December 12, 2022, defendant answered ready for trial. Over defendant's objection, the trial court continued the trial to January 17, 2023. The parties do not dispute that this continuance was attributable to the State for purposes of calculating the speedy trial deadline. In court on December 12, 2022, the court described the recently filed charge in count II as the "same event" but "a separate count."

¶ 11        On January 10, 2023, defendant filed a motion to dismiss the case based on a speedy trial violation. Defendant argued that the continuance the trial court had ordered on November 3, 2022, should be attributed to the State, not the defense. By defendant's calculations, if that continuance were attributed to the State, the trial scheduled for January 17, 2023, would not be within the 120 days allowed by statute. Defendant did not raise any separate argument specific to the recently added charge of unlawful possession of a weapon by a felon. On January 17, 2023, the court denied defendant's speedy trial motion, and the parties selected a jury.

¶ 12        Smith, who was the named victim in the aggravated battery charge, did not appear for trial on January 18, 2023. This prompted the State to voluntarily dismiss the aggravated battery charge. The parties stipulated that defendant was a convicted felon, so the only disputed issue at trial was whether he possessed a weapon on August 21, 2022.

¶ 13        The evidence showed that on the morning of August 21, 2022, police officers responded to a "ShotSpotter" alert near Smith's residence. The police found four 9-millimeter cartridge cases on the ground. Although it was later determined that these cartridge cases were all fired from the same weapon, the police never located a firearm.

¶ 14        Detective Christina Chavez of the Peoria Police Department testified that she spoke with Smith around 2 p.m. on August 21, 2022. Chavez noticed that Smith's residence had a "Ring" brand doorbell camera. Over defendant's objection, the trial court admitted into evidence two

video clips that were captured by Smith's doorbell camera. This court has reviewed those video clips. Both video clips have sound, though the transcript reflects that the clips were muted when played for the jury. The video clips appear to have been taken from a stationary camera next to a door leading into Smith's residence. The camera was positioned to show the door to Smith's residence, part of the street in front of her residence, and two narrow driveways. In both clips, there is text in the top left of the screen that says "ring.com."

¶ 15 The first video clip is 20 seconds long. It bears a timestamp that begins at "08/21/2022 07:11:59 CDT." This video clip depicts the following. There was a white car parked in the driveway of Smith's residence, a white car parked in another driveway, and two cars parked in the street. A man, whom Chavez identified at trial as defendant, stood by the car that was parked in Smith's driveway. A woman, whom Chavez identified at trial as Smith, stood in the doorway to her residence. Defendant held what appears to be a bottle in his left hand. Defendant used his right hand to take a black object out of the right side of his pants, and he wedged that object between his left elbow and the side of his body. Defendant then reached into his right pants pocket and pulled out keys. As defendant walked up to Smith and tried to hand her the keys, she swung at him with something that looks like a rope with numerous balls on it. She took the keys from him and then swung the rope at him again as he walked away from the camera and toward the street. Smith followed defendant out to the sidewalk near the street and then swung the rope at him again. Defendant grabbed the rope with his right hand and seemingly hit Smith in the face with that hand, his left arm still draped against his body. Defendant turned to walk away. Smith walked toward him. Defendant then turned toward Smith. As defendant did so, he used his right hand to grab something tucked under his left arm. At that point, defendant was standing on the sidewalk where it met one of the driveways.

- 4 -

¶ 16		In the last second of this first video, defendant appears to have something in his right hand that he was pointing at the sidewalk in front of him. Smith was standing at least several feet away from defendant. From the sidewalk immediately in front of defendant's feet, a small puff of smoke, debris, or dust appeared. The video clip then ended abruptly.

¶ 17		The second video clip is 19 seconds long, and it bears a timestamp that begins at "08/21/2022 07:14:34 CDT." In this video clip, one of the cars that was parked in the street in the first clip was no longer there. A woman, whom Chavez identified at trial only as Smith's neighbor, entered Smith's residence.

¶ 18		Defendant elected not to testify or to present any evidence.

¶ 19		During the State's closing argument, the prosecutor argued that the evidence showed that defendant fired a gun and, therefore, also possessed the gun. In making this argument, the prosecutor focused on (1) the ShotSpotter alert, (2) the cartridge cases found at the scene, and (3) the first video clip, which the prosecutor argued showed defendant firing a gun. In rebuttal argument, the prosecutor again emphasized that defendant possessed the gun because he fired it. According to the prosecutor: "You see it on the video. He turns around, he points the gun to the ground, he fires it. He's a felon. He's guilty. Thank you." In both the State's initial closing argument and its rebuttal argument, the prosecutor replayed the video evidence for the jury.

¶ 20		The jury found defendant guilty of unlawful possession of a weapon by a felon. The trial court sentenced defendant to eight years in prison. Defendant timely appealed.

¶ 21		II. ANALYSIS

¶ 22		We took with the case defendant's unopposed motion to disregard certain unpublished authority that he cited at page 16 of his opening his brief. We hereby grant that motion.

¶ 23    On appeal, defendant raises four issues, including two distinct theories of why he was denied a speedy trial. Specifically, defendant first argues he was denied a speedy trial because the continuance the trial court ordered on November 3, 2022, should have been attributed to the State, not the defense. Defendant's other theory is that because the charges were subject to compulsory joinder, any delays that could be attributed to him on the aggravated battery charge— including the delay occasioned by the continuance ordered on November 3, 2022—cannot be attributed to him on the subsequently filed unlawful possession of a weapon by a felon charge. Defendant alleges his trial counsel was ineffective for failing to raise that argument below. Defendant's other two issues on appeal relate to alleged trial errors.

¶ 24    For the following reasons, we agree with defendant's second speedy trial theory. Accordingly, we reverse defendant's conviction on that basis, and we need not address the other issues defendant raises.

¶ 25    "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial." *People v. Cross*, 2022 IL 127907, ¶ 19. To ascertain whether counsel provided ineffective assistance by failing to assert a speedy trial violation, we must "determine whether defendant's right to a speedy trial was violated." *People v. Phipps*, 238 Ill. 2d 54, 65 (2010). "The remedy for ineffective assistance in this regard is the same as the remedy for any speedy trial violation found on appeal: outright reversal of the conviction or convictions in question." *People v. Isbell*, 2020 IL App (3d) 180279, ¶ 13.

¶ 26    Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2022)) says that a defendant who is detained continuously must be tried within 120 days of being taken into custody. The 120-day period commences automatically. *People v. McBride*, 2022

- 6 -

IL App (4th) 220301, ¶ 38. However, any delay "occasioned by the defendant" is excluded from the 120-day computation. 725 ILCS 5/103-5(a) (West 2022).

¶ 27　　　　As this court explained in *McBride*:

" 'Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense.' [Citation.] 'Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times.' [Citation.] In that situation, principles of compulsory joinder enter the equation. [Citation.]" *McBride*, 2022 IL App (4th) 220301, ¶ 39 (quoting *People v. Williams*, 204 Ill. 2d 191, 198 (2003)).

Section 3-3 of the Criminal Code of 2012 addresses joinder of charges:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), *if they are based on the same act*.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Emphasis added.) 720 ILCS 5/3-3 (West 2022).

Where later-filed charges are subject to compulsory joinder with the original charges, " 'the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges.' " *Williams*, 204 Ill. 2d at 201 (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)). Furthermore, " '[c]ontinuances obtained in

connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " (Emphasis omitted.) *Williams*, 204 Ill. 2d at 201 (quoting *Williams*, 94 Ill. App. 3d at 249). "Thus, it is possible that a trial involving multiple charges can be timely as to certain counts and untimely as to others." *McBride*, 2022 IL App (4th) 220301, ¶ 40. This concept is sometimes referred to as the " '*Williams* rule.' " *McBride*, 2022 IL App (4th) 220301, ¶ 40.

¶ 28    Here, defendant was arrested on August 23, 2022. The State charged him with aggravated battery on August 24, 2022. The State alleged that on or about August 21, 2022, defendant, "in committing a battery, without legal justification did knowingly discharge a firearm, being a handgun[,] in the direction of Angela Smith[,] thereby causing an injury to Angela Smith by means of the discharging of said firearm," while at Smith's residence. The record shows that the State was aware at the outset of this case that defendant was a convicted felon. After some delays attributable to the defense, on November 3, 2022, the trial court rescheduled the trial for December 12, 2022. On December 6, 2022, a grand jury indicted defendant for a second offense committed on or about August 21, 2022. That additional count alleged that defendant committed the offense of unlawful possession of a weapon by a felon "in that he knowingly had in his possession a firearm, being a handgun, and the defendant has been previously convicted of a felony, in this state, being unlawful possession of firearm ammunition by a felon, in Peoria County Case 2018 CF 182." On December 12, 2022, the court described the recently filed charge in count II as the "same event" but "a separate count." That day, over defendant's objection, the court rescheduled the trial to January 17, 2023. On January 17, 2023—more than 120 days after defendant was arrested (the parties say it was 146 days, but we counted 147)—the matter

proceeded to a jury trial on the charge of unlawful possession of a weapon by a felon. The State voluntarily dismissed the aggravated battery charge at trial.

¶ 29    Because defendant remained in continuous custody from August 23, 2022, through January 17, 2023, he received a speedy trial on the charge of unlawful possession of a weapon by a felon only if we can attribute to him on that charge the delays that were attributed to him before this charge was filed. Per the cases and statutes cited above, that issue depends on whether the charges were subject to compulsory joinder. Here, for purposes of the compulsory joinder analysis and the "*Williams* rule," the parties dispute only whether the two charges were "based on the same act." 720 ILCS 5/3-3(b) (West 2022).

¶ 30    Joinder of charges is not compulsory "where multiple offenses arise from a series of related acts," even if those acts are part of the same purpose or plan. *People v. Mueller*, 109 Ill. 2d 378, 385 (1985). "Thus, independent, overt acts that constitute different offenses are not required to be joined." *People v. Gooden*, 189 Ill. 2d 209, 219-20 (2000). As an example, in *Gooden*, our supreme court determined that the defendant committed multiple separate acts where he broke into a home, battered a woman, and then sexually assaulted her. *Gooden*, 189 Ill. 2d at 220. By contrast, where a defendant engages in " 'only one continuous and uninterrupted act,' " compulsory joinder applies. *People v. Hunter*, 2013 IL 114100, ¶ 18 (quoting *People v. Quigley*, 183 Ill. 2d 1, 11 (1998)). As an example, compulsory joinder applies where the same act violates two different statutes. *Hunter*, 2013 IL 114100, ¶ 18. It is irrelevant for purposes of compulsory joinder whether the subject charges have different elements. *Hunter*, 2013 IL 114100, ¶ 22. Applying these principles, in *Hunter*, our supreme court determined that where the defendant constructively possessed both cannabis and weapons simultaneously, the drugs and weapons charges were subject to compulsory joinder. *Hunter*, 2013 IL 114100, ¶¶ 19-20.

¶ 31        We hold that defendant's charges of aggravated battery and unlawful possession of a weapon by a felon were based on the same act. Defendant was a convicted felon. If he committed aggravated battery by personally firing a gun, he necessarily also possessed that gun unlawfully. Thus, when defendant fired the gun, he simultaneously violated two criminal statutes. We recognize that a felon could illegally possess a gun without firing it. Here, however, the only evidence the State produced that defendant unlawfully possessed a gun was that he fired one. Notably, the police never found a gun in defendant's possession, and no witness testified to seeing him with a gun. Indeed, the prosecutor's theory as to why defendant unlawfully possessed a gun was that the evidence showed he fired one—*i.e.*, there was a ShotSpotter alert, the police found spent cartridge cases at the scene, and the video showed defendant firing a gun.

¶ 32        In arguing that the two charges involved separate acts, the State asserts that defendant possessed the gun *before* he fired it and *before* he encountered Smith. According to the State, "the act of illegal possession of a weapon occurred as soon as defendant possessed the weapon, at a time and place before he encountered the victim of his battery, and is totally unrelated to her." This theory simply has no factual support in the trial evidence. There was no evidence about what happened before defendant encountered Smith. Notably, the two video clips introduced into evidence began with defendant encountering Smith outside her front door.

¶ 33        At oral argument, the State raised a new theory. According to the State, because the 20-second video clip (the first clip) showed defendant firing a gun in the last second of the video, defendant must have possessed that gun during the preceding 19 seconds of the video. The State proposed that the black object in defendant's possession that was partially visible at the beginning of this video clip must have been the gun. Therefore, the State reasoned that defendant committed a distinct act of possessing the gun seconds before he fired it.

¶ 34 There are multiple problems with the State's new theory. Our supreme court has refused to "allow the State to change its theory of the case on appeal." *People v. Crespo*, 203 Ill. 2d 335, 344 (2001). Although *Crespo* was a one act, one crime case, and the analysis of an "act" under the one act, one crime doctrine is not identical to the analysis under the compulsory joinder statute (*Hunter*, 2013 IL 114100, ¶¶ 21-22), we discern no reason why the State should be allowed to change its theory on appeal here either. The State procured defendant's conviction of unlawful possession of a weapon by a felon by arguing to the jury that defendant possessed a gun because he fired it. As the appellee, the State may "raise any *argument of record* in support of the circuit court's judgment." (Emphasis added.) *People v. Castleberry*, 2015 IL 116916, ¶ 22. However, the issue at hand is not an argument of record, but a new theory that was never presented to the jury.

¶ 35 Even if the State were allowed to change its theory on appeal, the State forfeited this theory by failing to argue it in the appellee's brief. See *People v. Rouse*, 2022 IL App (1st) 210761, ¶ 26 ("The Illinois Supreme Court rules governing briefs, which apply with equal force to appellants and appellees, explain that arguments not raised in briefs are forfeited.").

¶ 36 Moreover, even if the State had not changed and forfeited its theory, we would find the State's attempt to avoid application of compulsory joinder unpersuasive. The compulsory joinder statute "was enacted to prevent the prosecution of multiple offenses in a piecemeal fashion and to forestall, in effect, abuse of the prosecutorial process." *Quigley*, 183 Ill. 2d at 7. "A prosecutor might otherwise harass a defendant through successive prosecutions of multiple offenses and put a defendant through the expense of several trials until the prosecutor obtains a result that satisfies him." *Quigley*, 183 Ill. 2d at 7. Accepting the State's new theory would contravene the purpose of the compulsory joinder statute, opening the door to harassment through multiple prosecutions. The implication of the State's new theory is that it would have been

permissible for the State to prosecute defendant for firing a gun based on his actions at the end of the 20-second video clip, and when that case was over, prosecute him in a different case for illegally possessing that same gun seconds earlier in the same video clip. That seems to be exactly the type of harassment the compulsory joinder statute is meant to avoid.

¶ 37 Again, for purposes of the compulsory joinder analysis and the "*Williams* rule," the parties debate only whether the charges were based on the same act. Having held that the charges were based on the same act, we hold they were subject to compulsory joinder. Accordingly, pursuant to the "*Williams* rule," the delays attributable to the defense on the aggravated battery charge were not attributable to the defense on the subsequently filed charge of unlawful possession of a weapon by a felon. Defendant was in continuous custody for more than 120 days before he was tried on the charge of unlawful possession of a weapon by a felon, *i.e.*, from August 23, 2022, to January 17, 2023. Defendant could have filed a meritorious motion to dismiss this charge on this basis. Defense counsel provided ineffective assistance by failing to bring this meritorious issue to the trial court's attention. See *Isbell*, 2020 IL App (3d) 180279, ¶ 29. We must reverse defendant's conviction.

¶ 38 III. CONCLUSION

¶ 39 For the reasons stated, we reverse defendant's conviction of unlawful possession of a weapon by a felon.

¶ 40 Reversed.